2008 VT 137

**Randy FRANCIS v. Robert HOFMANN**

[969 A.2d 97]

No. 08-219

¶ 1. December 10, 2008. This appeal requires us to decide whether the superior court erred in affirming a sentence calculation by the Department of Corrections (DOC). Because we conclude that the sentence calculation was erroneous as a matter of law, we reverse the superior court's judgment.[1]

¶ 2. On May 29, 2003, Mr. Francis received sentences for three crimes: aggravated stalking, violating an abuse-prevention order (VAPO), and operating a vehicle under the influence of intoxicants (DUI). The stalking sentence was for three to five years, all suspended but thirty months. The VAPO and DUI sentences were for zero to three years and four to twelve months, respectively, and were entirely suspended. All three sentences were denominated "concurrent" by the sentencing court. The court did not otherwise announce, either in writing or orally, when the two suspended sentences were to begin. See 28 V.S.A. § 205(a) (authorizing suspended sentences of either fixed duration or "until further order of court").

¶ 3. Mr. Francis was incarcerated until July 25, 2005, serving the unsuspended portion of his stalking sentence. Mr. Francis continued to be detained thereafter on unrelated charges based on his conduct while in prison, and was ultimately released to probation in early

---

[1] Mr. Francis was released, by order of this Court, pending the resolution of this appeal. *Francis v. Hofmann*, No. 2008-219, slip op. at 1 (Vt. August 25, 2008) (unreported mem.).

January 2007. On November 4, 2007, Mr. Francis was detained on a probation-violation warrant, and his probation was ultimately revoked on December 17, 2007. He was ordered to serve out the remaining suspended portion of his stalking sentence, together with the remaining suspended VAPO and DUI sentences, with credit for time served according to law. Mr. Francis does not contend that the probation revocation was improper, but takes issue with the DOC's subsequent calculation of his remaining time to serve.

¶ 4. The DOC, in performing the sentence computation, began with the premise that, although the sentences had been declared concurrent, "[s]ince the longest term of the unsuspended portions of Mr. Francis' sentence was three years, his maximum release date, before applying . . . credit for time served and reduction of term, was December 17, 2010." After making several deductions — none of them disputed on this appeal — the DOC arrived at a maximum release date of June 27, 2009. In early February of 2008, however, Mr. Francis began to contend, via administrative channels, that his sentence would "max out" well before then. On February 14, 2008, through counsel, Mr. Francis filed a complaint for review of governmental action, see V.R.C.P. 75, contending that his correct "max date [was] within several day[s] of May 22, 2008." On the same day, Mr. Francis moved for summary judgment, contending that his three "concurrent" sentences should have been merged into one "aggregate sentence [of] five years, and not one day more." Following a hearing on April 17, 2008, the State filed a cross-motion for summary judgment on April 24.

¶ 5. On May 21, 2008, the superior court granted summary judgment to the State. The court ruled as follows, and dismissed Mr. Francis' complaint.

A sentence which is probated is not imposed. It becomes imposed only when the convicted person is ordered to serve the time, as when probation is violated. *In re Hall*, 100 Vt. 197, 202-03 (1927). We therefore disagree with petitioner that his "aggregate sentence" should have been computed as of the time it was handed down. Had the terms of probation not been violated, the suspended portions would never have been served; it makes no sense to "aggregate" them under such circumstances.

When the interpretation of a statute by an agency falls within the scope of the agency's particular administrative expertise, courts will normally defer to that interpretation. *Williston Inn Group*, 2008 VT 47[,] ¶ 12. Absent clear error, the administrative interpretation will be controlling. We consider DOC's interpretation of the statutes here at issue to be reasonable and will therefore defer to it.

¶ 6. We review the grant of summary judgment de novo, applying the same standard as the trial court. *Peerless Ins. Co. v. Frederick*, 2004 VT 126, ¶ 10, 177 Vt. 441, 869 A.2d 112. When both parties move for summary judgment, each party is entitled to all reasonable doubts and inferences with respect to the other party's motion. *Bixler v. Bullard*, 172 Vt. 53, 57, 769 A.2d 690, 694 (2001). Two related issues are presented here: (1) whether defendant's probation began at the time of sentencing, and (2) whether his probation was for a fixed time or "until further order of court." See 28 V.S.A. § 205(a) (2000).

¶ 7. We must first determine the time at which the two entirely suspended but "concurrent" sentences began to be executed. The superior court relied on *In re Hall*, 100 Vt. 197, 202-03, 136 A. 24, 26

(1927), for the proposition that a suspended sentence "becomes imposed only when the convicted person is ordered to serve the time, as when probation is violated." *Hall* is factually inapposite, however. In that case, Hall received only one sentence, which was suspended upon payment of a fine. He was released to probation on that sentence before serving any time. When his probation was later revoked, Hall claimed that he was entitled to credit for time served based on the time he had spent on probation. This Court rejected the claim because Hall had never been incarcerated. *Id.* at 202, 136 A. at 26. Here, of course, Mr. Francis was incarcerated on one sentence that he was told would be "concurrent" with his two probationary (i.e., suspended) sentences. *Hall* is not on point, and the trial court erred in relying on it.

¶ 8. The trial court also erred in deferring to the DOC's sentence calculation, characterizing that calculation as the "interpretation of a statute . . . within the scope of [the DOC's] particular administrative expertise." This deference was misplaced under the facts of this case. The DOC, in calculating Mr. Francis' sentence, was faced at the outset with essentially a legal question: what is the effect of imposing "concurrent" but suspended sentences? Put another way, may a person who receives three "concurrent" sentences, one partially suspended and two entirely suspended, be made to serve out all three terms consecutively when his probation is revoked? This question is fundamentally a legal one; thus, our review is nondeferential and plenary. *State v. Dixon*, 2008 VT 112, ¶ 27, 185 Vt. 92, 967 A.2d 1114.

¶ 9. The options available to the sentencing court are defined, in Vermont, by statute. See 13 V.S.A. § 7030. The sentencing court may impose suspended, i.e. probationary, sentences pursuant to 28 V.S.A. § 205(a), and concurrent sentences, pursuant to 13 V.S.A. § 7032. There is nothing

in the statutes to suggest that suspended sentences may not run concurrently with sentences of confinement; nor do the statutes expressly endorse such a practice, however. Section 7032 embodies the common law, however, and thus as a general matter multiple sentences imposed at the same time are presumed to run concurrently unless the record expressly shows the sentencing court's intent that they be consecutive. *State v. Kasper*, 137 Vt. 184, 213, 404 A.2d 85, 101 (1979); see also A. Campbell, Law of Sentencing § 9:12, at 281 (2d ed. 1991) ("[W]here the sentencing record is silent or ambiguous . . . most courts apply a presumption [that] all sentences were to run concurrently"; collecting cases).

¶ 10. The State contends that 13 V.S.A. § 7032(b) is to the contrary. That subsection provides that "[w]hen . . . multiple sentences are imposed . . . each shall run from its respective date of commitment after sentence." Further, the State cites § 7031(b) for the proposition that Mr. Francis' suspended sentence would only "commence to run from the date on which [he was] received at the correctional facility for service of the sentence." On this theory, it appears, Mr. Francis' suspended sentence would necessarily hang over him for the rest of his natural life — regardless of whether the court had expressed the intention that the sentence be indeterminate — for it would never "commence to run" until he violated the terms of his probation. Thus, his putatively "concurrent" sentence of probation would not be concurrent; to the contrary, it would be consecutive. The statutes do not compel this result, and we will not infer it. See *Addison County Cmty. Action v. City of Vergennes*, 152 Vt. 161, 165-66, 565 A.2d 233, 235 (1989) (noting that this Court will "avoid construing a statute in a manner that would render the statute ineffective, or lead to irrational consequences"). The statute, as noted above, allows the sentencing court to choose *either* a fixed *or*

an indeterminate term for suspended sentences. 28 V.S.A. § 205(a).

¶ 11. If the court intended to impose a probationary sentence that would begin to run only after the sentence of incarceration was completed, it could have done so by clearly expressing that intent. As the United States Supreme Court noted nearly a century ago, "[s]entences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them." *United States v. Daugherty*, 269 U.S. 360, 363 (1926). If it is the DOC's practice to interpret putatively "concurrent" sentences like Mr. Francis' in the manner it did here, such sentences do not reveal with any certainty what punishment a person will actually face. On these facts, such uncertainty must be resolved in favor of the prisoner. Accordingly, we conclude that defendant began to serve his probationary terms at the time they were imposed, and must therefore receive credit against them for the time he spent incarcerated on his stalking conviction.

¶ 12. The sentence also leaves uncertain whether the trial court, in imposing "suspended" yet "concurrent" sentences, meant to impose indefinite probation that would last "until further order of court," or terms of probation that would last only for the stated periods. See 28 V.S.A. § 205(a) (2000) (allowing court to suspend sentence and place person on probation under conditions "for such time as [the court] may prescribe in accordance with law *or* until further order of court" (emphasis added)).[2]

¶ 13. The court's intent is somewhat ambiguous from the sentencing instru-

ment, but one thing is clear: if the trial court intended to impose indeterminate probation terms, the order imposing "concurrent" terms was not only meaningless, but impossible. We do not presume that the trial court intended to impose an impossible sentence. By ordering the probation to be "concurrent" with the sentence of imprisonment, the trial court could only have intended to impose fixed terms of probation, as authorized by § 205(a), or the word "concurrent" would have had no effect.

¶ 14. Because we presume that sentences imposed on multiple offenses at the same time are concurrent absent *clear* language to the contrary, *Kasper*, 137 Vt. at 213, 404 A.2d at 101, and because the ambiguity as to the length of Mr. Francis' probation must be construed in his favor, Mr. Francis' probationary sentences should have been interpreted as being for definite terms commencing on the date of their imposition. He must therefore receive credit against his suspended sentences for the time he spent in custody on his three-to-five-year sentence. Accordingly, Mr. Francis' summary judgment motion should have been granted, and his release ordered, based on a maximum aggregate sentence of five years.

*Reversed and remanded.*

---

[2] 28 V.S.A. § 205 has since been amended to require defined terms of probation for persons convicted of certain crimes. See 2005, No. 192 (Adj. Sess.), § 18, eff. May 26, 2006. The earlier enactment applies to this case.